FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.
★ JUL 08 2011
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------- X
SALVATORE TANTILLO, with Lisa Mazzola,
as payee for the Plaintiff-Claimant,

                  Plaintiff,

- against -

JOANNE BARNHART, Commissioner of Social
Security,
                  Defendant.
---------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

04 Civ. 2223 (BMC)(MDG)

**COGAN**, District Judge.

This is a dispute over attorneys' fees previously awarded to Carol Goldstein, Esq., the former counsel of plaintiff Salvatore Tantillo, a disabled person as defined under the Social Security Act (the "Act"). Tantillo is represented here by his sister, Lisa Mazzola, who may be a lawyer or at least, judging by the form and content of her submissions, may be assisted by one whose identity is not disclosed. Mazzola was appointed as Tantillo's "payee", i.e., fiduciary, by the Commissioner upon the Administrative Law Judge's determination that Tantillo was not competent to administer his own benefits. The crux of her claim is that after Goldstein completed and was paid a court-ordered fee for obtaining a remand of Tantillo's claim for a new administrative hearing, Goldstein surreptitiously filed a second fee application with this Court, not telling Tantillo about it. Goldstein also did not disclose to the Court that Tantillo had represented himself at a hearing on a new benefits application and that it was pursuant to that new application that he was awarded benefits. Judge Trager, to whom this case had been

previously assigned, not knowing that Tantillo had appeared at the hearing *pro se*, granted this second fee application, awarding Goldstein $25,000, and Mazzola seeks to vacate it.

I find there is some merit to Mazzola's claims. Whether intentionally or not, Goldstein led Judge Trager to believe that she and she alone was responsible for Tantillo's victory before the ALJ, when in fact, Goldstein had no participation in that last hearing at all. I conclude that had Judge Trager known this, he would have reduced her claimed contingent fee to an amount more accurately reflecting that Goldstein was only partially responsible for Tantillo's award. I therefore direct Goldstein to return a portion of the fee.

## BACKGROUND

The chronology of events leading to this motion is crucial.

Tantillo first filed an application for disability insurance benefits (DIB) under Title II of the Act on January 15, 1994. The claim was denied at the examiner level and it went it to a hearing before an Administrative Law Judge. The ALJ denied the application on October 28, 1997. The Appeals Council then remanded the matter back to an ALJ, who held a hearing on January 17, 2001, and on March 13, 2001, the ALJ again found no disability. This time, on November 8, 2002, the Appeals Council affirmed the ALJ. On February 3, 2004, Goldstein (after obtaining an extension) commenced an action on behalf of Tantillo seeking review of this decision in the Southern District of New York. Because venue was improper in the Southern District (apparently Goldstein chose that venue based on the location of her office), the action was transferred here by stipulation and assigned to Judge Trager on May 20, 2004.

At least through February 3, 2004, when the action was filed in the Southern District, Goldstein was representing Tantillo with his authorization. She appeared for him in at least one

the prior administrative hearings, and filed the action in the Southern District seeking review of the November 8, 2002 denial.

In connection with Goldstein's representation, Tantillo signed at least three retainer agreements. The first agreement, dated December 26, 2000, was to govern "through the first hearing before an Administrative Law Judge." It provided that

> I agree that my attorney shall receive, as her fee, an amount equal to twenty-five (25%) percent of the past-due benefits which are awarded to me and my family, or $4000.00, whichever is less, in the event my case is won. No attorney's fee will be charged if we do not win.

Notably, this retainer agreement only applied to proceedings "before the Social Security Administration." It did not in any way reference proceedings before the district court if those became necessary because of an adverse decision by the Commissioner.

Apparently recognizing the need for further authorization after the second denial of benefits, Goldstein had Tantillo execute a new retainer agreement on January 23, 2004, just before she filed suit in the Southern District. That agreement was entitled "**DISTRICT COURT RETAINER.**" It provided:

> I hereby retain **CAROL S. GOLDSTEIN** as my attorney to represent me in my action for Social Security Disability Benefits and/or Supplemental Security Income Benefits in the United States District Court.
>
> I understand and agree that the fee to be paid my attorney will be fixed by the United States District Court at the conclusion of my case, if successful.
>
> I understand that the Social Security Administration is required to withhold from my retroactive benefits 25% of what may be due me and my family.
>
> I understand and agree that I will pay my attorney fee in the amount of 25% of said retroactive benefits, subject to approval by the United States District Court.

Thus far, the matter appears straightforward. However, perhaps known to Goldstein at the time or perhaps not – the record is unclear – on March 18, 2004 – just after the filing of the Southern District action but before it was transferred to this Court – Tantillo filed new, *pro se* applications for both disability insurance benefits and supplemental security income payments with the Social Security Administration.

On October 26, 2004, some five months after the Southern District action was transferred here, the Commissioner and Goldstein stipulated to remand Tantillo's original application for further hearings before an ALJ. Between the transfer-in date of May 20, 2004 and the filing of the stipulation of remand on October 26, 2004, no action occurred in this case except that the Commissioner filed his answer.

Promptly after the case was remanded, on November 12, 2004, Goldstein filed a motion for attorneys' fees before Judge Trager. This motion was filed under the Equal Access to Justice Act, 28 U.S.C. § 2415 ("EAJA"), which provides that when a party prevails in district court against the United States (subject to exceptions not applicable here), the United States will be ordered to pay a reasonable attorney's fee if its position was not substantially justified.

Goldstein, consistent with EAJA, did not apply for any of her time spent in the prior proceedings before the Commissioner. Her fee application sought compensation for 12.2 hours spent solely on the district court proceeding – principally, conferring with Tantillo about the district court, drafting the district court complaint, reviewing the stipulation of remand, and preparing her fee application. The Commissioner stipulated to a negotiated reduction of her claim, and Judge Trager approved the reduced fee of $1891.40 plus $150 in costs under the EAJA (down from plaintiff's original request of $2,046.63 in fees and $154.63 in costs).

On October 4, 2006 – nearly two years later – ALJ Harap held a supplemental hearing, and on October 27, 2006, he found Tantillo to be disabled based on his bipolar disorder, arthritis, chronic back pain, acid reflux disease and polysubstance abuse in partial remission. ALJ Harap awarded him $140,000 in past due benefits. (Mazzola objects to the use of the term "award" in this context, apparently preferring "entitlement," but award is the term that is commonly used.)

Here is where the question arises: Goldstein did not appear for Tantillo at the hearing; he appeared *pro se*. It is not entirely clear why. The record suggests, obliquely, that because Tantillo had listed himself as *pro se* in his 2004 application, only he received notice of the hearing. However, Goldstein's timeslips show that she was not entirely off the case. Following the judgment of remand on November 10, 2004, she had minimal, sporadic contact with both Tantillo and the Social Security Administration concerning the status of his claim. At least a couple of letters came to her from the Social Security Administration, although it is not clear if those letters gave her notice of the hearing. These brief contacts continued through May of 2005; started again in February through April 2006; included a brief call with Tantillo in September 2006; and culminated with actions of significance reflected in two timeslip entries:

> 10/26/06   Received and reviewed copy of letter from ODAR [Office of Disability Adjudication and Review] which we received from claimant and discussed this with claimant
> 11/03/06   Office visit with claimant to discuss favorable decision

It thus seems obvious that whatever she knew of Tantillo's *pro se* applications prior to October 26, 2006, Goldstein by that date or immediately after knew that Tantillo had represented himself at the remand hearing before ALJ Harap, since she learned of the award and also of course knew that she had not appeared at the hearing.

At her last meeting with Tantillo, on November 3, 2006, Goldstein had Tantillo execute a new fee agreement which provided as follows:

> I hereby employ CAROL S. GOLDSTEIN, ESQ. to represent me in my Social Security Disability/SSI case before the Social Security Administration.
>
> I agree that if a favorable decision is issued at the Initial or Reconsideration levels, or after an initial decision by an Administrative Law Judge, not subject to further appeal, my attorney shall receive, as her fee, twenty-five (25%) percent of the past-due benefits which are awarded to **me and my family**, or $5,300.00, whichever is less. (No attorney's fee will be charged if we do not win.)
>
> If a favorable decision is issued and there are no past-due benefits my attorney will file a petition for a fee based on the time spent on my case.
>
> If I am awarded benefits by the Appeals Council or by a Federal Court, or following an order of remand issued by the Social Security Administration or a Federal Court, the fee shall be 25% of the total accrued payable to the claimant and any auxiliaries. CAROL S. GOLDSTEIN shall be required to file and obtain express authorization for any fee payable under this paragraph in accordance with the applicable Federal statutory law and Code of Federal Regulations.

Less than three weeks after execution of this November 3rd agreement, on November 21, 2006, Goldstein filed a second fee application, this time under 42 U.S.C. § 406(b). That statute provides for the district court to determine a reasonable attorneys' fee to be paid out of the claimant's recovery, not to exceed 25% of that recovery. In her application under this statute, Goldstein claimed 17.7 hours on work in the district court (the amount in her prior EAJA application, plus time subsequently incurred post-disposition of that application) – not before the ALJ. She disclosed her prior EAJA award, clearly in the expectation that it would be credited against her §406(b) award. She did not disclose the terms or existence of her retainer agreements in her application; rather, the Commissioner, in opposing her application (for reasons described below), noted that she had a contingent fee agreement. Goldstein then asserted in reply that 25% of $140,000 (whether pursuant to her contingent fee agreement or §406(b)) was actually $35,000, but she was not seeking the maximum allowable contingent fee (i.e., an extra $10,000).

The Commissioner, appearing in the capacity as a friend of the Court, expressed the view that granting Goldstein's application would constitute a windfall at the expense of Tantillo. She noted that the effective rate for 17.7 hours at $25,000 would result in an hourly rate of $1412.42 per hour. The Commissioner did not disclose, and there is no indication that Judge Trager knew, that Tantillo had received his award on remand after proceeding *pro se*.

On July 10, 2007, Judge Trager rejected the Commissioner's recommendation and awarded Goldstein the full $25,000 that she had requested. He based his decision principally on the risk that plaintiff had taken; that Goldstein was experienced in social security work; and that plaintiff "had been denied benefits at least three times before" (although I can only count two prior hearings before the award of benefits). He ordered Goldstein to return the $1891.40 EAJA fee as a credit against the $25,000, which she did (although Mazzola protests that it took considerable prompting), and Tantillo cashed the check. The Commissioner then deducted the $25,000 from the benefits payable to Tantillo, and paid the difference to Mazzola, as Tantillo's appointed fiduciary.

Nearly three years later, on May 21, 2010, Mazzola, on behalf of Tantillo, moved before Judge Trager to vacate the $25,000 award on the ground that Goldstein's §406(b) application was fraudulent. Her application makes the following points: (1) the hearing that resulted in the award was the result of a new application that Tantillo had filed and litigated *pro se*, not the benefits application upon which Goldstein had represented him; (2) Goldstein never disclosed to Judge Trager that Tantillo had proceeded *pro se* at that hearing; (3) Goldstein had failed to give Tantillo notice of her §406(b) application, so Mazzola had been unable to learn that the $25,000 had been withheld until the Commissioner provided her with an accounting years later; (4) there was never any fee agreement between Goldstein and Tantillo other than the December 26, 2000

agreement; (5) the EAJA award was, according to the stipulation approved by Judge Trager, "in full satisfaction of [Goldstein's] claim for attorneys' fees."

## DISCUSSION

Mazzola relies on Federal Rule of Civil Procedure 60(b)(6), which allows vacatur of a judgment for "any ... reason that justifies relief." Despite this broad grant of authority, a movant can invoke this provision only in "extraordinary circumstances or where the judgment may work an extreme and undue hardship." In re Emergency Beacon Corp., 666 F.2d 754, 759 (2d Cir. 1981) (internal citations omitted). An attorney's neglect of her client, and, in the Second Circuit, even her gross neglect, will generally not constitute grounds for relief. See Neimaizer v. Baker, 793 F.2d 58, 63 (2d Cir. 1986); Stefanopoulos v. City of New York, No. 01-CV-0771, 2007 WL 160819 (E.D.N.Y. Jan. 17, 2007) ("[I]t is well settled in this Circuit that an attorney's gross negligence is not a basis for relief under Rule 60(b)(6)."). On the other hand, an attorney's fraudulent acts against a client may justify relief. See McKinsey v. Boyle, 404 F.2d 632 (9th Cir. 1968).

The facts presented by Mazzola are sufficient as a procedural matter to warrant inquiry under this provision. She alleges that she had been trying to find out for years why the Commissioner made deductions from Tantillo's benefits. Goldstein, for her part, nowhere states that she notified Tantillo of either the submission of her §406(b) fee application or of it being granted; giving her the benefit of the doubt, she may have assumed that since Tantillo had authorized the fee in the retainer agreements, that was notice enough, or else he would realize it from the deductions in his benefit check. But it would not have been unreasonable for Tantillo to assume that Goldstein's EAJA application was the only application that she would submit, as there were three fee agreements between Goldstein and him, and the interplay between EAJA

and §406(b) is not easily understood among the uninitiated. Under any scenario, the facts are not disputed that Tantillo had no notice of the application for the award, no notice of Judge Trager's Order on the award, and only relatively recently acquired information as to why the Commissioner was reducing his benefits.

However, the fact the Mazzola has proceeded under the proper rule does not mean she is entitled to relief. Some of the points she makes are simply wrong. First, with proper retainer agreements, a lawyer is entitled to recover both EAJA fees and, subsequently, §406(b) fees, as long as the EAJA fees are returned or deducted from the §406(b) award. The Supreme Court made this clear in Gisbrecht v. Barnhart, 535 U.S. 789, 796, 122 S.Ct. 1817, 1822 (2002), where it held:

> Congress harmonized fees payable by the Government under EAJA with fees payable under § 406(b) out of the claimant's past-due Social Security benefits in this manner: Fee awards may be made under both prescriptions, but the claimant's attorney must "refun[d] to the claimant the amount of the smaller fee." Act of Aug. 5, 1985, Pub.L. 99-80, § 3, 99 Stat. 186. "Thus, an EAJA award offsets an award under Section 406(b), so that the [amount of the total past-due benefits the claimant actually receives] will be increased by the ... EAJA award up to the point the claimant receives 100 percent of the past-due benefits."

(citation omitted). Thus, there was nothing wrong in and of itself with Goldstein filing a §406(b) application after she had been awarded EAJA fees. Indeed, that is the way it works in every social security case resulting in a successful remand. Similarly, Mazzola's reading of the So Ordered stipulation granting EAJA fees, by which she contends that Goldstein agreed not to seek any further fees, is incorrect, as it removes the document from its context – the stipulation simply meant that the United States would have no further liability to Tantillo for attorneys' fees. It did not address the obligations of Tantillo and Goldstein *inter se*.

Mazzola and Goldstein are both wrong in their interpretation of what matters came before ALJ Harap. Mazzola contends that it was only Tantillo's 2004 applications for benefits. Goldstein contends it was only the 1994 application for benefits. I do not know why either party is confused. The section entitled "Decision" at the end of his opinion states:

> It is the decision of the Administrative Law Judge that, *based on the application filed on January 15, 1994*, the claimant is entitled to a period of disability commencing April 27, 1995, and to disability insurance benefits under sections 216(i) and 223, respectively, of the Social Security Act.
>
> It is the further decision of the Administrative Law Judge that, *based on the application filed on March 18, 2004*, the claimant was disabled as defined under section 1614(a)(3)(A) of the Social Security Act, beginning April 27, 1995, and that the claimant's disability has continued at least through the date of this decision.

(Emphasis added). It is thus clear that ALJ Harap convened and decided the hearing based on all of the pending applications, not just the 1994 application, and not just the 2004 applications.[1]

Mazzola is equally mistaken in asserting that the only relevant fee agreement that Tantillo signed was the September 6, 2000 fee agreement. As noted above, there were two more agreements that expressly authorized Goldstein's 25% contingent fee. Mazzola seems to think that since she could not obtain a copy of the 2004 or 2006 fee agreements from the Social Security Administration, then they were not filed and Goldstein could not have relied on them. That is incorrect for four reasons.

First, at least one of them must have been filed, because the Commissioner referred to it in his opposition to Goldstein's original §406(b) application. If the Administration lost or misfiled it after that, that is not Goldstein's problem.

---

[1] Goldstein's view that the award only pertained to the 1994 applications appears based on one or more oral conversations she had with an employee of the Social Security Administration. There is no documentation to support that conversation, and whatever the employee told Goldstein, it is clear from the language of ALJ Harap's award that he ruled on all the applications.

Second, Mazzola has not pointed me to any regulation requiring Goldstein to file her fee agreements with the Social Security Administration in order for them to be given effect.

Third, even if there were such a regulation, it would not prevent Judge Trager from relying on the 2004 or 2006 agreements because Tantillo, having signed them, obviously is bound by their terms. Mazzola wrongly contends that Goldstein is bound by the $4000 cap in the 2000 agreement, but Goldstein is right that the 2000 agreement, by its terms, only applied to administrative proceedings, not to proceedings in the district court.

Fourth, even without the 2004 or 2006 fee agreements, Goldstein had the right under §406(b) to apply for a 25% contingent fee for work in the district court. The presence of an agreement is one factor that Judge Trager could and did consider, but he still had the ability under §406(b) to award the fee that he in fact awarded.

In sum, while one may question why Goldstein obtained the 2006 fee agreement, there is nothing improper about her obtaining the 2004 fee agreement in light of the significantly expanded scope of her representation, at least as it was anticipated at that time.

Mazzola's belief that Goldstein's representation ended with the granting of her EAJA application is also not supported by the record. As noted above, Goldstein continued to confer with the Social Security Administration and with Tantillo well after the EAJA award to Goldstein. Whether her communications were as aggressive or persistent as they might or should have been is a different issue, but especially considering the 2004 and 2006 fee agreements, and the absence of any proof that Tantillo took action to terminate Goldstein, there is no basis for concluding that the EAJA award effected Goldstein's termination.

Notwithstanding the shortcomings of some of Mazzola's arguments, I am troubled by the fact that neither Goldstein nor the Commissioner ever disclosed to Judge Trager that Tantillo had obtained his award before ALJ Harap as a result of proceeding *pro se*, without any assistance from Goldstein. The Commissioner expressly asserts that this does not matter because the only fees that Judge Trager awarded Goldstein under §406(b) reflected time spent on work in the district court. Goldstein takes a similar approach, asserting that the district court proceeding was the be-all-and-end-all of Tantillo's case: "It is only because of the remand from this Court on plaintiff's 1994 application that was successfully appealed by affirmant on behalf of plaintiff that plaintiff was able to receive Title II (Social Security Disability) benefits from 1995." I think both of these arguments are extraordinarily shortsighted.

It is not "only" because of the remand that Tantillo received his award. A remand that resulted in another denial would have gotten him nothing, and would have given Goldstein no claim to her contingent fee. For Tantillo to prevail, and for Goldstein to claim her contingency, two things had to happen: (a) the remand; and (b) a successful administrative result. Thus, when the Commissioner asserts that the administrative result is irrelevant because Goldstein was only being paid for district court work, that is not accurate; there was a precondition to her being paid a §406(b) award, and that was success before ALJ Harap. Stated otherwise, the Commissioner's position might be sustainable if all Goldstein had sought was a reasonable hourly rate for her 17.7 hours – that would effectively be only for work in the district court – but she was seeking a significant multiplier by way of a contingent fee based upon a result that she did not directly obtain. It is thus myopic to consider her §406(b) award as solely relating to work on the district court level, even though the time spent on that was one factor in the ultimate award.

The shortcomings of the view of Goldstein and the Commissioner are apparent from ALJ Harap's decision. Although it seems the record from the prior hearings played a dominant role on remand, Tantillo definitely added some value in securing his victory. The ALJ specifically referenced Tantillo's *pro se* application – "I have determined that a fully favorable decision may be issued based on his January 15, 1994 Title II application *and current Title XVI application*" (emphasis added). The ALJ also referenced the fact that Tantillo had testified at the remand hearing. Moreover, Mazzola asserts, and Goldstein is not in a position to contradict it, that the purpose of the 2004 *pro se* applications was to present new medical evidence to the Commissioner, and that in fact "new medical records [were] introduced which amended the onset date of his disability" at the hearing before ALJ Harap.[2]

One way of looking at this is to consider whether Goldstein's 2004 retainer agreement, in providing for a contingent fee based on the outcome of an administrative hearing on remand, contemplated as one of its terms that Goldstein would appear for Tantillo at the remanded hearing, if she was successful in obtaining one. Although the agreement did not expressly require that Goldstein would represent Tantillo on remand, I find that there was an implicit understanding that Goldstein would handle the hearing on remand, at least if Goldstein wanted to claim the contingency as a result of an award in the remanded hearing. It must be remembered that Goldstein had already represented Tantillo in at least one prior administrative hearing, and that her contingent fee was expressly tied to the final outcome of those proceedings. It would have been absurd for either party to have thought at the time they signed the retainer agreement

---

[2] This may not have been a good thing for Tantillo. Although he prevailed on the issue of disability, it appears that the delayed onset date of 1995 instead of the prior date he offered of 1992 had the effect of limiting the period during which he could receive benefits. The record shows that after his award, he approached Goldstein and she had some communications with ALJ Harap to try to move the date back to 1992, but it is unclear whether those efforts succeeded. Nevertheless, the point is that Tantillo, not Goldstein, was captaining his own ship to whatever level of victory he obtained at the remand hearing.

that Goldstein could garner a contingent fee based on a hearing at which Tantillo appeared on remand through some other lawyer, who would of course also seek a fee, or that Tantillo would appear at the remand hearing without any representation and still owe Goldstein the same contingent fee that he would have owed had she successfully represented him.

This is made more obvious by looking at the amount of effort Goldstein had to expend in the district court to get the case remanded. Of the 17.7 hours she claimed on her §406(b) application, there is almost no advocacy involved, and the largest block of time is preparing her fee application. The just over two page complaint is boilerplate[3] and took her five hours to discuss with Tantillo, prepare, and file; filing and mailing the summons and complaint took .7 hours; she spent .5 hours reviewing the stipulation extending the Commissioner's time to answer; it took .4 hours to stipulate to transfer the action here since Goldstein had filed it in the wrong district; it then took .6 hours to agree to and execute the stipulation on the Commissioner's proposal to remand the case. I cannot avoid the conclusion that what happened here is what happens in many cases seeking review of disability denials: Goldstein filed the complaint, the U.S. Attorney reviewed the record and unilaterally (in consultation with the Commissioner) determined that remand for rehearing was appropriate; and Goldstein signed the stipulation that the U.S. Attorney sent her. That is just not much attorney work in the district court.

This is not to say that the quantitative or qualitative nature of the work disqualifies Goldstein from her contingent fee. But it shows that while the district court work was a precondition to her right to recover the contingent fee, so was a favorable result on remand, and

---

[3] Judge Trager found "no evidence that the case was submitted on boilerplate pleadings or that legal research was unnecessary." Based on my review of the complaint and Goldstein's timeslips, I do not see how that finding can stand. Law of the case does not prevpent me from revisiting this finding where it was clearly erroneous. See Arizona v. California, 460 U.S. 605, 618, 103 S.Ct. 1382 (1983).

it would have been perfectly natural for Judge Trager to assume, in the absence of any disclosure, that it was Goldstein who had obtained that favorable result on remand.

I am also compelled to conclude that Goldstein was less than candid in failing to disclose to Judge Trager that she had not represented Tantillo before ALJ Harap, and that, indeed, the non-disclosure was likely intentional. What she did was to rely on the usual occurrence that an attorney obtaining a district court remand order will represent the claimant in the hearing on remand, and structured her §406(b) application to make it seem like that is what occurred here. Her perfunctory application stated as follows:

> 3. After filing the Summons and Complaint with the United States District Court, the plaintiff was offered a remand under sentence four from the United States Attorney on behalf of the Commissioner of Social Security.
>
> 4. This case was thereupon remanded to the Appeals Council and thereafter for a hearing before an Administrative Law Judge.
>
> 5. A hearing was held on October 4, 2006 before Administrative Law Judge Frederick Harap. As a result of this hearing the claimant received a fully favorable decision on October 27, 2006 finding him disabled commencing April 27, 1995.
>
> 6. As a result of this decision the claimant will receive past due benefits of approximately $140,000.00 for the period of time from April 27, 1995 through the present.
>
> 7. Based on the work that was performed as outlined in the attached itemized list I am respectfully requesting an attorney fee of $25,000.00 for work done before the court.

The omission that Tantillo appeared *pro se* before the ALJ, rather than through Goldstein, is glaring. I do not see how Judge Trager could have assumed anything other than that Goldstein had represented Tantillo before ALJ Harap. And again, I believe the non-disclosure was material because although Goldstein's hourly charges would be based only on district court work, her contingency was based entirely on the successful result obtained, without her participation, in the hearing on remand. Judge Trager must have assumed Goldstein appeared on remand when he

held that Goldstein's "experience very likely contributed to an efficient handling of the case." Spending five hours preparing and serving a three page boilerplate complaint and signing a stipulation of remand proffered by the Commissioner does not take much experience and does not reflect efficiency.

There are other indications of deliberation in Goldstein not advising Judge Trager that Tantillo had appeared *pro se* on remand. First, there is no evidence before me, neither in her timeslips nor her submissions on this motion, that she ever advised Tantillo that she was going to submit an application to take nearly one-fifth of his past-due benefits. It is not sufficient for her to say that she had a contractual and statutory right to make the application, or that Tantillo had signed the agreements. Both the agreements and the statute expressly required district court determination, and Tantillo had the right to be heard before so sizeable a chunk of his benefits were diverted to Goldstein. The record does not disclose when Mazzola was appointed as Tantillo's representative, but it is clear that she would have submitted opposition, and, more importantly, it would have come out that Tantillo had obtained his benefits *pro se*.

Second, Goldstein has offered no explanation of why she had Tantillo sign the 2006 retainer agreement, after she had learned of ALJ Harlap's award, and three weeks before Goldstein filed her fee application. The timing is of concern. Goldstein knew by that time that Tantillo had won his benefits, yet had him execute an agreement, not referencing the 2004 agreement, in which Tantillo agreed that "*if* a favorable decision is issued at the Initial or Reconsideration levels, or after an initial decision by an Administrative Law Judge," she could claim her 25% contingent fee. I do not see much substantive difference between the 2004 and 2006 retainer agreements, but Goldstein apparently felt the need to further document her right to the maximum 25% contingent fee, reaffirming it notwithstanding Tantillo's self-representation at

the remand hearing. The *ex post facto* 2006 agreement is some indication that Goldstein was scrambling to secure her contingent fee notwithstanding her awareness, by that time, that Tantillo had represented himself on remand.

Having found that Goldstein's non-disclosures to Judge Trager and Tantillo require revisitation of her fee, the question becomes what fee, if any, is appropriate. As noted above, neither Tantillo's retainer agreements nor §406(b) *require* administrative representation on remand to trigger the contingency; I have found such representation is implicitly assumed in both the statute and the contracts, but because it is not expressly required, its absence does not disqualify Goldstein from receiving the fee.

If Tantillo had terminated Goldstein without cause, Goldstein would still be entitled to a quantum meruit fee that could include consideration of her right to a contingency, even though the contract is deemed terminated. See Cheng v. Modansky Leasing Co., 73 N.Y.2d 454, 457-58, 541 N.Y.S.2d 742, 744 (1989); Matter of Montgomery, 272 N.Y. 323, 326, 6 N.E.2d 40 (1936). In contrast, where an attorney is discharged for cause, professional misconduct, or abandonment of the case, she forfeits her right to her fee. First National Bank of Cincinnati v. Pepper, 454 F.2d 626, 633 (2d Cir. 1972). Neglect of a client's case can constitute professional misconduct and constitute grounds for not paying the attorney's fee. See Cruz v. Olympia Trails Bus Co., No. 99 civ. 10861, 2002 WL 1835440 (S.D.N.Y. Aug. 8, 2002) (failure to return client phone calls could be deemed cause to discharge firm).

Here, I cannot sustain Mazzola's position that Goldstein's engagement terminated upon issuance of the EAJA award. There is no evidence to support it. To the contrary, Goldstein's timeslips show that she was continuing on the case well after the EAJA award. Tantillo even approached her and informed her about the benefits he had obtained *pro se* at the remand

hearing, and Goldstein attempted to communicate, at Tantillo's request, with ALJ Harap to try to obtain a modification of the onset date that ALJ Harap had found at the hearing.

Whether Tantillo terminated Goldstein or not, however, Goldstein would not be entitled to recover a fee if she effectively abandoned the case or Tantillo. I cannot find abandonment on these facts; nevertheless, Goldstein's representation post-EAJA award was not optimal. It is hard to understand how an attorney whose client was the beneficiary of the Commissioner's essentially unilateral decision to remand a case could fail to get the hearing on remand scheduled for nearly two years, and even then, not learn that her client had obtained the hearing *pro se* after filing new applications. Goldstein's timeslips reflect that as late as September 18, 2006, she spoke to Tantillo regarding the status of his hearing, and somehow did not pick up that the hearing was set to occur less than three weeks later.

The Second Circuit has held that in determining the appropriate fee under §406(b), the Court should give due deference to the parties' fee agreement. See Wells v. Sullivan, 907 F.2d 367, 372 (2d Cir. 1990). As Judge Trager noted, to determine whether the fee provided in the agreement is reasonable, the court should determine: 1) whether it is within the 25% limitation; 2) whether there was any fraud or overreaching in making the agreement; and 3) whether awarding the requested amount would be a windfall to the attorney. Id. Based on both Goldstein's non-disclosure to Judge Trager of Tantillo's self-representation and the absence of her participation itself at the hearing on remand, the "windfall" issue appears in a different light than at the time Judge Trager decided the §406(b) application. However, I recognize that neither the statute nor the fee agreements expressly required Goldstein to appear at the hearing on remand; that it was Tantillo's decision to proceed *pro se*; that Goldstein, although less than diligent in obtaining the hearing, did nothing that would constitute cause for her termination; and

that the fees she sought and received were already $10,000 less than the $35,000 contractual and statutory maximum.

Nevertheless, $1412 per hour is too high an effective rate for little more than preparing a boilerplate complaint and signing a two-page stipulation of remand. Goldstein gets the credit for obtaining the remand, however little work that took, and for having created that portion of the record from the prior administrative hearings, but Tantillo gets the credit for obtaining his benefits *pro se* at the hearing. Each was therefore responsible. The maximum allowable fee was $35,000; I believe a reasonable fee for Goldstein's efforts would be one-half of that. I therefore find that the appropriate fee for her services is $18,500, and she is directly to return $7500 to Mazzola, as fiduciary for Tantillo, forthwith.

## CONCLUSION

Mazzola's motion is granted in part and denied in part. Goldstein is directed to return $7500 to Mazzola, as payee for Tantillo, within 14 days, and to file proof of payment, failing which judgment will enter.

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
July 7, 2011